17-107

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RIVERSIDE CENTER SITE 5 OWNER LLC, RIVERSIDE CENTER 5 MEZZ LLC, EL AD RIVERSIDE LLC, RIVERSIDE CENTER 5 HOLDCO LLC, SILVERSTEIN RIVERSIDE HOLDING COMPANY LLC, EL AD US HOLDING, INC., Plaintiffs, -against- LEXINGTON INSURANCE COMPANY, Defendant. | Docket No.: ECF CASE **COMPLAINT WITH JURY DEMAND** |

Plaintiffs RIVERSIDE CENTER SITE 5 OWNER LLC, RIVERSIDE CENTER 5 MEZZ LLC, EL AD RIVERSIDE LLC, RIVERSIDE CENTER 5 HOLDCO LLC, SILVERSTEIN RIVERSIDE HOLDING COMPANY LLC, and EL AD US HOLDING, INC. (hereinafter “Plaintiffs”), by their attorneys WEG AND MYERS P.C., as and for their Complaint against defendant LEXINGTON INSURANCE COMPANY (hereinafter "Defendant"), respectfully allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs have commenced this action against Defendant LEXINGTON INSURANCE COMPANY for breach of its contractual obligations in connection with a Builder’s Risk Policy of Insurance Defendant issued to Plaintiffs.

2. The policy of insurance herein, policy number 65305533, is a Builder’s Risk Policy which was to cover losses relating to a construction project located at One West End Avenue, New York, New York (hereinafter referred to as the “Subject Policy”).

3. On or about March 5, 2017, the insureds suffered physical loss and damage arising out of sprinkler pipe fittings freezing and bursting, causing significant water damage to the insured premises (the "Subject Loss"). As a result, the insureds filed an insurance claim with Defendant in connection with the physical damages suffered. To date Defendant has paid Plaintiffs $11,600,000.00 in connection with the physical damages suffered. However, Plaintiffs have also filed a claim for reimbursement under the Delay in Completion coverage provisions of the Subject Policy. To date, Defendant has failed to pay any monies in connection with that claim.

4. As a result of Defendant's failure to pay Plaintiffs in connection with its Delay in Completion Claim, Plaintiffs have commenced this action for breach of contract.

## JURISDICTION AND VENUE

5. This action is filed under and pursuant to 28 U.S.C. §1332, in that the Plaintiffs and Defendant are residents of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. This action involves a dispute as to the rights and obligations of the parties in connection with a policy of insurance contracted for by Plaintiffs on the one hand, all foreign limited liability companies organized and existing under and by virtue of the laws of the State of Delaware, with a principal place of business in New York, and on the other hand, Defendant, an organization existing under the laws the Commonwealth of Massachusetts, maintaining its principal place of business in Boston, Massachusetts which regularly insures entities and individuals in the United States and specifically in this District.

7. Pursuant to 28 U.S. Code § 1391(b)(2) venue is proper as Plaintiffs' primary business offices as well as the loss location are situated in the jurisdictional area of the Southern District of New York.

8. An actual controversy of a justiciable nature exists between Plaintiffs and Defendant involving the rights and obligations under the aforesaid policy of insurance and the aforesaid controversy can be determined by judgment of this Court without further suit.

**PARTIES**

9. At all relevant times herein mentioned, Plaintiff RIVERSIDE CENTER SITE 5 OWNER LLC was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business at 250 Greenwich Street, 38th Floor, New York, New York.

10. At all relevant times herein Plaintiff RIVERSIDE CENTER 5 MEZZ LLC was the sole member of Plaintiff RIVERSIDE CENTER SITE 5 OWNER LLC.

11. At all relevant times herein mentioned, Plaintiff RIVERSIDE CENTER 5 MEZZ LLC, was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business 575 Madison Avenue, 22nd Floor, New York, New York.

12. At all relevant times herein, Plaintiff RIVERSIDE CENTER 5 HOLDCO LLC was the sole member of Plaintiff RIVERSIDE CENTER 5 MEZZ LLC.

13. At all relevant times herein, Plaintiff RIVERSIDE CENTER 5 HOLDCO LLC was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business at 250 Greenwich Street, 38th Floor, New York, New York.

14. At all relevant times herein RIVERSIDE CENTER 5 HOLDCO LLC is comprised of members EL AD RIVERSIDE LLC and SILVERSTEIN RIVERSIDE HOLDING COMPANY LLC.

15. At all relevant times herein, Plaintiff EL AD RIVERSIDE LLC, was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business at 575 Madison Avenue, 22nd Floor, New York, New York.

16. At all relevant times herein EL AD RIVERSIDE LLC is comprised of members EL AD RIVERSIDE HOLDING LLC and EL AD US HOLDING INC.

17. At all relevant times herein, EL AD RIVERSIDE HOLDING LLC, was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business at 575 Madison Avenue, 22nd Floor, New York, New York.

18. At all relevant times herein, Plaintiff SILVERSTEIN RIVERSIDE HOLDING COMPANY LLC, was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business at 250 Greenwich Avenue, 38th Floor , New York, New York.

19. At all relevant times herein, Plaintiff SILVERSTEIN RIVERSIDE HOLDING COMPANY LLC is comprised of members: SILVERSTEIN RC5 HOLDINGS LLC, SILVERSTEIN RC5 HOLDINGS FF I LLC, and SILVERSTEIN RC5 HOLDINGS FF II LLC.

20. At all relevant times herein, SILVERSTEIN RC5 HOLDINGS LLC, was a foreign limited liability company organized and existing under and by virtue of the laws of the

State of Delaware, having its principal place of business at 250 Greenwich Avenue, 38th Floor, New York, New York.

21. At all relevant times herein, SILVERSTEIN RC5 HOLDINGS FF I LLC, was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business at 250 Greenwich Avenue, 38th Floor, New York, New York.

22. At all relevant times herein, SILVERSTEIN RC5 HOLDINGS FF II LLC, was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business at 250 Greenwich Avenue, 38th Floor, New York, New York.

23. At all relevant times herein mentions, Plaintiff EL AD US HOLDING INC., was a foreign corporation organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business at 575 Madison Avenue, 22nd Floor, New York, New York.

24. At all times hereinafter mentioned, Defendant is an organization existing under the laws of the Commonwealth of Massachusetts, maintaining its principal place of business in Boston, Massachusetts, and which regularly insures entities and individuals in the United States and, specifically, in this District.

## BACKGROUND FACTS

25. Heretofore and prior to August 25, 2015, Defendant, for good and valuable consideration, made and issued to Plaintiffs a certain Policy of Insurance bearing number 65305533 in connection with a construction project located at and known as One West End

Avenue New York, New York (the "Subject Project"). A copy of the Subject Policy is annexed hereto as Exhibit "A".

26. The Subject Policy identifies RIVERSIDE CENTER SITE 5 OWNER LLC as the First Named Insured and then defines the First Named Insured to include: "any subsidiary, affiliated, associated, or allied company, corporation, firm, organization and the Insured's interest in partnerships, limited partnerships, joint venture, and/or any owned (wholly or partially) or controlled company(ies) or other legal entity where the First Named Insured maintains an interest, or over which it exercises management control or which the First Named Insured agrees to cover, as now or hereafter constituted or acquired; and any other party or interest that is required by contract or agreement."

27. As a result RIVERSIDE CENTER 5 MEZZ LLC, EL AD RIVERSIDE LLC, RIVERSIDE CENTER 5 HOLDCO LLC, SILVERSTEIN RIVERSIDE HOLDING COMPANY LLC, and EL AD US HOLDING, INC. are insureds under the Subject Policy.

28. The Subject Policy included an Endorsement "A", which contained coverage for damages suffered as a result of a delay in the completion of the Subject Project.

29. At the time that the Subject Policy was issued, the Subject Project was scheduled to be completed on or before May 10, 2017.

30. The Delay in Completion Endorsement provides coverage for: "**DELAY** in Completion loss, as defined in this Endorsement, incurred during the **DELAY**, and caused by direct physical loss or damage to the **INSURED PROJECT** during the Period of Insurance".

31. A Delay is defined in the policy as: "the period of time between the **SCHEDULED DATE OF COMPLETION**, as stated in the **DECLARATIONS**, and the actual date on which commercial operations or use and occupancy commenced or could have

commenced; however, not exceeding such **DELAY** as would result if the loss or damage were repaired or replaced with the exercise of due diligence and dispatch, but in no even exceeding the **PERIOD OF INDEMNITY** stated in the Declarations for all indemnifiable occurrences combined. The **DELAY** shall not be terminated by the expiration or cancellation of the Policy with respect to the indemnity payable hereunder in direct consequence of insured loss or damage occurring prior to such expiration or cancellation".

32. The **SCHEDULED DATE OF COMPLETION** is defined in the policy as: " the later of the following (i) the date stated in the declaration of this endorsement; or (ii) the date on which but for the insured loss or damage, commercial operations or use and occupancy would have commenced."

33. The **PERIOD OF INDEMNITY** is defined as: "the number of calendar days stated in the **DECLARATIONS** of this Endorsement which is in excess of the **WAITING PERIOD DEDUCTIBLE** for which the Company shall be liable for indemnity under this endorsement to the policy. The **PERIOD OF INDEMNITY** begins but for the **WAITING PERIOD DEDUCTIBLE**, with the date upon which, had the loss not occurred, the **INSURED PROJECT** would have been completed or available for commercial use and occupancy but not prior to the **SCHEDULED DATE OF COMPLETION**. The **PERIOD OF INDEMNITY** ends on the earlier of the date on which the **INSURED PROJECT** is completed but not exceeding the length of time it takes with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the loss or damage or the number of calendar days specified whichever is less. **THE PERIOD OF INDEMNITY** hereunder shall not be limited or otherwise affected by the expiration of the policy.

34. The **WAITING PERIOD DEDUCTIBLE** identified in the Subject Policy is 30 days per occurrence.

35. The **INSURED PROJECT** is described as a "new construction of a 990,000 square foot, 42 story, cast in place concrete residential and retail structure with parking."

36. The **INSURED PROJECT** is defined in the Policy as: "All permanent and/or temporary works, preliminary works (including associated works and Project Site mobilization) executed or in the course of execution, including materials, good, parts, excavations, spare parts, inventory, consumables and all other things, equipment whatsoever nature used for or intended to be used in the **INSURED PROJECT**, and including electricity, gas and water connections, all designs, drawings, specifications and plans to be provided, together with computer and building services equipment, all other parts or units or equipment, plant and machinery and whatsoever nature the property of the Insured or for which they are responsible (except contractor's or sub-contractor's constructional plant, equipment, not forming part of or intended to from part of temporary and/or permanent works) while on or adjacent to the **INSURED PROJECT** or elsewhere within the Policy Territory, and all associated and ancillary works connected therewith built, constructed, erected, supplied, installed, repaired, replaced, revised or otherwise in the course of being built, constructed, erected, supplied, repaired, replaced or otherwise, tested, commissioned and brought to full operation, and including project management and other similar costs of the Insured or others as declared to the Company and included in the Estimated Value of the **INSURED PROJECT**."

37. The Subject Policy further provides coverage for Soft Costs as follows: "Subject to the Sub-limit of Liability and the Period of Indemnity specified in the Declaration if this Endorsement and the Period of Insurance, the Company will indemnify the First Named Insured

for loss defined as **SOFT COSTS/ADDITIONAL EXPENSES** loss of **RENTAL INCOME** and/or Loss of **GROSS EARNINGS**, as scheduled in this Endorsement to the extent such loss is actual loss substantiated by the First Named Insured during the **DELAY**."

38. The policy defines **SOFT COSTS/ADDITIONAL EXPENSES** as: "expenditures which are necessarily insured during the **PERIOD OF INDEMNITY** that would have been incurred by the First Named insured if the **DELAY** had not occurred per the secluded values in the **DECLARATIONS**."

39. On March 5, 2017 sprinkler pipe fittings froze and fractured the hoist rooms located on the fourteenth and fifteen floors of the Subject Premises.

40. The insured timely notified Defendant of the above loss.

41. The Subject Policy was in full force and effect at the time of Plaintiffs Subject Loss.

42. The substantial completion of the Subject Project did not take place until July 23, 2018.

43. As a direct result of the Subject Loss, the Subject Project was delayed by Two Hundred Thirty-Five (235) days.

44. On or about October 4, 2018, Plaintiffs submitted a detailed claim identifying and providing back up documentation with respect to all damages suffered as a result of the delay in completion of the Subject Project.

45. Subsequent to Defendant's receipt of this claim, Defendant issued two voluminous separate requests for information. Specifically, Defendant issued a Request for Information, dated October 24, 2018, in which it requested 29 different line items of information.

Defendant also issued a second Request for Information, dated October 24, 2018, wherein it requested an additional 10 different line items of information.

46. Notwithstanding the breadth of these requests Plaintiffs promptly furnished Defendant all of the information requested.

47. Without any explanation Defendant has failed to pay any monies to Plaintiffs in connection with its Delay in Completion claim, including a refusal to issue Plaintiffs any advance payments for the amount of "undisputed" losses in connection with this Delay in Completion claim.

48. The failure of a carrier to issue to its insured payments for "undisputed" covered losses while the parties continue to resolve disputed items constitutes an "unfair settlement practice" as set forth in 11 NYCRR § 216.6(e) and New York Insurance Law § 2601.

**AS AND FOR A FIRST CLAIM AGAINST DEFENDANT**

**(Breach of Contract)**

49. Plaintiffs repeat, reiterate and reallege each and every allegation contained within paragraphs "1" though "48", inclusively, with the same force and effect as though more fully set forth herein at length.

50. On or about March 5, 2017, while the Subject Policy was in full force and effect, the Subject Property suffered a covered loss pursuant to the terms and conditions contained in the Subject Policy.

51. While Defendant has issued payments with respect to the damages the insured suffered as it relates to the actual physical loss suffered to the Subject Project, to date it has failed to pay Plaintiffs any monies in connection with the Delay in Completion loss suffered due to the Subject Loss.

52. As a result of the Subject Loss, Plaintiffs have suffered Delay in Completion damages estimated to total $35,425,350.24.

53. Notwithstanding the fact that Plaintiffs have satisfied all conditions precedent for coverage and timely notified Defendant of Plaintiffs' Loss, Defendant has failed to issue any payments to Plaintiffs in connection with its loss and damages. As a result, Defendant has breached its contract with Plaintiffs.

54. As a direct result of Defendant's breach of the Subject Policy, Plaintiffs have been damaged in the sum of at least $35,425,350.24.

55. As a result of Defendant's breach of the Subject Policy, Defendant is liable to Plaintiffs in the amount of $35,425,350.24.

**WHEREFORE**, Plaintiffs demand judgment as follows:

a) On its first claim against Defendant LEXINGTON INSURANCE COMPANY, in the amount believed to exceed $35,425,350.24, representing Plaintiffs damages, plus interest thereon from March 6, 2017, together with costs and disbursements of this action; and

b) For such other and further relief as to which this Court deems just and proper.

Dated: New York, New York
December 14, 2018

Yours, etc.

**WEG AND MYERS, P.C.**

By: ______________________
Joshua L. Mallin, Esq. (JM0474)
*Attorneys for Plaintiff*
Federal Plaza
52 Duane Street, Second Floor
New York, New York 10007
(212) 227-4210

TO:

Lexington Insurance Company
99 High Street, 23rd Floor
Boston, Massachusetts 02110

Docket No.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RIVERSIDE CENTER SITE OWNER LLC, RIVERSIDE CENTER 5 MEZZ LLC, EL AD RIVERSIDE LLC, RIVERSIDE CENTER 5 HOLDCO LLC, SILVERSTEIN RIVERSIDE HOLDING COMPANY LLC, EL AD US HOLDING, INC.,

Plaintiffs,

v.

LEXINGTON INSURANCE COMPANY,

Defendant.

---

SUMMONS IN A CIVIL ACTION

COMPLAINT WITH JURY DEMAND

RULE 7.1 STATEMENT

---

*Weg and Myers, P.C.*
Attorney for Plaintiffs
Office and Post office Address, Telephone
Federal plaza
52 Duane Street
NEW YORK, NEW YORK 10007
(212) 227-4210

---